# THE FOLLOWING ORDER IS APPROVED.



**Dated: May 18, 2010**

Hon. Thomas S. Utschig
United States Bankruptcy Judge

---

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

---

In re:

JACKSON GREEN, LLC,    Case No. 09-10099

        Debtor.

---

## ORDER CONFIRMING DEBTOR'S PLAN OF REORGANIZATION AS MODIFIED

---

The plan under Chapter 11 of the Bankruptcy Code filed by Jackson Green, LLC, as of January 28, 2010 having been transmitted to creditors; and

It having been determined that the disclosure statement accompanying the plan contains adequate information; and

It having been determined that the requirements for confirmation set forth in Bankruptcy Code § 1129 have been satisfied; and

That the Debtor and the Class 1 Creditor, Key Bank, have agreed to permit and have submitted one ballot in acceptance of the plan;

1

That the Debtor and the Class 2 Creditor, Wachovia Bank, have agreed to permit and have submitted one ballot in acceptance of the plan;

That the Debtor and the Class 8 Creditor, Everest Real Estate Fund, LLC, also known as Equibase Capital Group, LLC, have agreed to permit and have submitted one late ballot in acceptance of the plan;

That the Debtor and the Class 1 and Class 2 creditors have agreed to permit and have submitted two ballots in acceptance of the plan, subject to the terms of the Stipulation for Allowance of Claim and Chapter 11 Plan Amendment by and between the Debtor and Wells Fargo Bank, as Trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates, Series 2006-C4 (the "Stipulation") filed by May 4th, 2010 [Docket No. 284],"

and

The plan is modified by the following modifications:

**Article IV Section 4.01 Class 1 Claim (Secured Claim of Key Bank).**

The Class 1 Claim is impaired. The Class 1 Claim is the secured claim of Key Bank, which is secured by a perfected first priority mortgage on the Debtor's real estate, described on the attached **Exhibit "B"**.

The allowed Class 1 Claim as of the petition date, excluding the Allowed Attorneys' Fees Claim and the Allowed Default Interest and Late Fees Claim as stated in "**Article IV Section 4.025 Treatment Applicable to Both Class 1 and Class 2 Claims**," is as follows:

Note A
| | |
|---|---|
| Principal | $17,603,707.66 |
| Interest | $ 90,659.09 |

The allowed claim shall bear interest at the rate of 6.18% per annum from the petition date and shall be paid in equal monthly installments of $105,000.00. The first monthly installment shall be due on the 11th day of the month after the date of confirmation of the Chapter 11 Plan, and subsequent monthly payments

2

due on the 11th day of each month thereafter. The entire unpaid balance shall be due and payable on or before July 11, 2016.

All terms of the Key Bank mortgage and loan covenants shall survive except the following:

(a) Interest Rates and Monthly Payment;

(b) The restriction imposed for parking shall be modified so that the rights granted by the lease with Green Lot, LLC shall be the sole requirement for parking.

(c) All provisions pertaining to the escrow and Lock Box arrangement. All payments shall be made directly by the Debtor. Key Bank waives its rights pertaining to the lock box provisions contained in the Cash Management Agreement, dated as of June 9, 2006 among Jackson Green, LLC, Builders Reality & Investment Corp. and Column Financial, Inc., if the Debtor complies with all the material terms of the Plan. If the Debtor defaults under any provisions of the Plan, or the Confirmation Order, and the Debtor fails to cure such default within ten (10) days, Key Bank shall be entitled to reinstate, in full, the terms of the lock box provisions;

(d) All provisions relating to the escrow for tenant improvements; and

(e) All prepayment premiums, yield maintenance charges or premiums, fees, penalties, charges, and prohibitions. The premium penalty shall lapse and shall no longer be effective 3 years from the date of confirmation of the Plan.

(f) All existing subordinate mortgage liens shall not be deemed as default under the loan restrictions.

(g) The restrictions relating to transfer shall not be deemed violated by virtue of the treatment of the class six and seven claims surrender.

## Article IV Section 4.02 Class 2 Claim (Secured Claim of Wachovia Bank).

The Class 2 Claim is impaired. The Class 2 Claim is the secured claim of Wachovia Bank, which is secured by a perfected second priority mortgage on the Debtor's real estate, described on the attached **Exhibit "B"**.

The allowed Class 2 Claim as of the petition date, excluding the Allowed Attorneys' Fees Claim and the Allowed Default Interest and Late Fees Claim as stated in "**Article IV Section 4.025 Treatment Applicable to Both Class 1 and Class 2 Claims**," is as follows:

Note B
Principal                                    $ 1,133,519.86

|  |  |  |
|---|---|---|
| Interest | $ | 34,328.34 |

The allowed claim shall bear interest at 6.18% per annum from the petition date and shall be paid in equal monthly installments of $7,200.00. The first monthly installment shall be due on the 20th day of the month after the date of confirmation of the Chapter 11 Plan, and subsequent monthly payments due on the 20th day of each month thereafter. The entire unpaid balance shall be due and payable on or before July 11, 2016.

All terms of the Wachovia mortgage and loan covenants shall survive, except for the following:

(a) Interest Rates and Monthly Payment;

(b) The restriction imposed for parking shall be modified so that the rights granted by the lease with Green Lot, LLC shall be the sole requirement for parking.

(c) All provisions pertaining to the escrow and Lock Box arrangement. All payments shall be made directly by the Debtor. Wachovia Bank waives its rights pertaining to the lock box provisions contained in the Cash Management Agreement, dated as of June 9, 2006 among Jackson Green, LLC, Builders Reality & Investment Corp. and Column Financial, Inc., if the Debtor complies with all the material terms of the Plan. If the Debtor defaults under any provisions of the Plan, or the Confirmation Order, and the Debtor fails to cure such default within ten (10) days, Wachovia Bank shall be entitled to reinstate, in full, the terms of the lock box provisions;

(d) All provisions relating to the escrow for tenant improvements; and

(e) All prepayment premiums, yield maintenance charges or premiums, fees, penalties, charges, and prohibitions. The premium penalty shall lapse and shall no longer be effective 3 years from the date of confirmation of the Plan.

(f) All existing subordinate mortgage liens shall not be deemed as default under the loan restrictions.

(g) The restrictions relating to transfer shall not be deemed violated by virtue of the treatment of the class six and seven claims surrender.

**Article IV Section 4.025 <u>Treatment Applicable to both Class 1 Claims and Class 2 Claims</u>**

Treatment applicable to Key Bank, the Class 1 creditor, and Wachovia Bank, the Class 2 creditor (hereinafter collectively referred to as the "<u>Lender</u>") is

as follows:

(a) The interest rate of 6.18% shall be calculated from the petition date on Note B. The accrued interest on Note B shall be capitalized. All payments made by the Debtor since the petition date shall be applied to interest and to principal (calculated at the rate of 6.18% per annum). No late fees, default interest or attorneys' fees shall be charged or assessed to the Debtor's account with the Lender from the petition date through the date on which the Plan is confirmed (the "Confirmation Date").

(b) The Lender waives its right to yield maintenance on its A Note and B Note, classified in the Plan as the Class One and Class Two claims through the maturity dates if the Debtor complies with all the material terms of the Plan. Upon the Debtor's default in the performance of the material provisions of the Plan or the Confirmation Order, the Lender shall be entitled to reinstate, in full, the terms and provisions for yield maintenance, as set forth in the loan documents.

(c) Except as set forth herein, the Lender waives its claim for 80% of the late fees and default interest under the Notes. The allowed late fees and default interest (the "Allowed Default Interest and Late Fees Claim") shall be as follows:

| | |
|---|---|
| Note A – Default interest | $59,748.82 |
| Late Fees | $ 5,103.41 |
| Note B – Default interest | $ 3,841.34 |
| Late Fees | $ 357.59 |
| **Total** | **$69,051.16** |

(d) The Lender shall be entitled to an allowed claim of $40,000.00 of attorney's fees and costs (the "Allowed Attorneys' Fees Claim"). The Debtor shall pay $20,000.00 of the legal fees within fifteen (15) days of the Confirmation Date out of the tenant improvement account held by Helios AMC, LLC, the special servicer in connection with the claims. The Lender agrees to permit the release of $20,000.00 within fifteen days of the Confirmation Date from the tenant improvement account to pay $20,000 of the Allowed Attorneys' Fees Claim. The remaining $20,000.00 of the Allowed Attorneys' Fees Claim shall be added to the Allowed Default Interest and Late Fees Claim and paid in accordance with the terms set forth herein.

(e) The Debtor shall pay fifty (50%) percent of the Allowed Default Interest and Late Fees Claim ($34,525.58) and $10,000.00 of the Allowed Attorneys' Fees Claim, for a total of $44,525.58, on or before the first anniversary of the Confirmation Date (the "First Installment"); provided, however, if the Debtor fails to timely pay the First Installment on or before the first anniversary date of the Confirmation Date, the Debtor shall not be in default, but shall be required to pay a twenty percent (20%) late payment premium on the First Installment amount and shall pay such premium together with any unpaid portion

5

of the First Installment on or before the second anniversary of the Confirmation Date.

(f) The remaining amount of both the Allowed Attorneys' Fees Claim and the Allowed Default Interest and Late Fees Claim shall be due on or before the second anniversary of the Confirmation Date (the "Second Installment"); provided, however, if the Debtor fails to timely pay the Second Installment, the Debtor shall pay an additional twenty percent (20%) late payment premium on the amount of the Second Installment, and shall pay such premium, together with any unpaid portion of the Second Installment on or before the third anniversary of the Confirmation Date.

(g) If the Debtor fails to pay any portion of Allowed Attorneys' Fees Claim and Allowed Default Interest and Late Fees Claim, including any and all applicable late payment premiums, on or before the third anniversary of the Confirmation Date, the Lender shall be entitled to a thirty percent (30%) late payment premium on the unpaid balance of the Allowed Attorneys' Fees Claim and the Allowed Default Interest and Late Fees Claim, and such balance and premium shall be due on or before the fourth anniversary date of the Confirmation Date.

(h) If the Debtor fails to pay any portion of Allowed Attorneys' Fees Claim and Allowed Default Interest and Late Fees Claim, including any and all applicable late premiums, on or before the fourth anniversary of the Confirmation Date, the Lender shall be entitled to a fifty percent (50%) late payment premium on the unpaid balance of the Allowed Attorneys' Fees Claim and the Allowed Default Interest and Late Fees Claim, and such balance and premium shall be due on or before the fifth anniversary date of the Confirmation Date.

(i) If the Debtor fails to pay any portion of Allowed Attorneys' Fees Claim and Allowed Default Interest and Late Fees Claim, including any and all applicable late payment premiums, on or before the fifth anniversary of the Confirmation Date, the Debtor shall be in default under the terms of the loan documents, the Plan and the Confirmation Order.

(j) The Lender shall withdraw its claims filed in the David Heyes and Paula Heyes bankruptcy case (Case No 09-10091 filed in the United States Bankruptcy Court for the Western District of Wisconsin, the "Heyes Bankruptcy"), and further waives any other claims that it has in the Heyes Bankruptcy.

(k) If the Debtor defaults under any material provision of the Plan, or the Confirmation Order, and the Debtor fails to cure such default within ten (10) days, the Debtor stipulates that the automatic stay under 11 U.S.C. §362(a) shall be modified immediately to permit the Lender to foreclose on the property and to take such further legal action that it is entitled to take under the loan documents.

## Article IV Section 4.03  Class 3 Claim (Secured Claim of First United Funding, LLC).

The Class 3 Claim is impaired. The Class 3 Claim is the allowed secured claim of First United Funding, LLC, which is secured by a perfected third priority mortgage on the Debtor's real estate, described on the attached **Exhibit "B"**, pursuant to the terms and conditions of the Combination Mortgage, Security Agreement, Assignment of Rents and Fixtures, and Fixture Financing Statements dated April 25, 2007 recorded as document number 0715908071 with Cook County on June 8, 2007, Promissory Note and all related documents ("FUF Loan Documents"). The Class 3 Claim is allowed in the amount of $1.5 million. The claim shall bear interest at 3% per annum and interest only shall be paid quarterly for a term of four years. The entire unpaid balance including principal and interest shall be paid in full in four years. Except as provided in this section, the terms, conditions, and obligations under the FUF Loan Documents remain in full force and effect and Debtor hereby acknowledges and reaffirms the FUF Loan Documents and all such terms, conditions, and obligations.

## Article IV Section 4.08  Class 8 Claim (Secured Claim of Everest Real Estate Fund, LLC).

The Class 8 Claim is the claim of Everest Real Estate Fund, LLC, also known as Equibase Capital Group, LLC. This claim shall be paid $10,000.00 in nine months and $10,000.00 shall be paid in fifteen months after the date of confirmation of the Chapter 11 Plan. This claim shall not bear interest. All rights and claims of Everest Real Estate Fund, LLC of any nature shall expire (or shall be deemed fulfilled) upon payment of the $20,000.00.

IT IS ORDERED that:

The Debtor's Plan of Reorganization as of January 28, 2010, as further modified herein, is confirmed. A copy of the Plan is attached.

The Stipulation is granted in its entirety and to the extent the terms of this Order is inconsistent with the terms of the Stipulation, the terms of the Stipulation shall control.

###

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In Re:

Jackson Green, LLC,

           Debtor.

Case No. 09-10099

## AMENDED PLAN OF REORGANIZATION OF THE DEBTOR
## AS OF JANUARY 28, 2010

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| ARTICLE I | SUMMARY | 1 |
| ARTICLE II | CLASSIFICATION OF CLAIMS AND INTERESTS | 1 |
| ARTICLE III | TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS | 2 |
| ARTICLE IV | TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN | 2 |
| ARTICLE V | ALLOWANCE AND DISALLOWANCE OF CLAIMS | 7 |
| ARTICLE VI | PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 7 |
| ARTICLE VII | MEANS OF IMPLEMENTATION OF THE PLAN | 7 |
| ARTICLE VIII | GENERAL PROVISIONS | 8 |
| ARTICLE IX | RELEASE | 8 |
| ARTICLE XI | INJUNCTION | 9 |
| ARTICLE XI | DISCHARGE | 9 |
| ARTICLE XII | RETENTION OF JURISDICTION BY THE COURT | 9 |

# ARTICLE 1
## SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Jackson Green, LLC (the "Debtor") from sale of assets and cash flow from operations.

This Plan provides for five (5) classes of secured claims, four (4) classes of unsecured claims, and one (1) class of equity security holders. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 60 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

# ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

| | | |
|---|---|---|
| 2.01 | Class 1. | The Claim of Key Bank Real Estate Capital, to the extent allowed as a secured claim under § 506(a) of the Code. |
| 2.02 | Class 2. | The Claim of Wachovia Securities, to the extent allowed as a secured claim under § 506(a) of the Code. |
| 2.03 | Class 3. | The Claim of First United Mortgage to the extent allowed as a secured claim under § 506(a) of the Code. |
| 2.05 | Class 4. | The claims of Holly Duran Real Estate Partners, ADAN 3, CBIZ Gibraltar Real Estate Services, and US Equities Realty. |
| 2.06 | Class 5. | Claims of tenants with security deposits. |
| 2.08 | Class 6. | Claim of Albion Jackson Green |
| 2.07 | Class 7. | Claim of MCZ/Michael Lerner |
| 2.09 | Class 8. | Claim of Everest Real Estate Fund, also known as Equibase. |
| 2.10 | Class 9. | All other Unsecured Claims allowed under § 502 of the Code. |

1

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

**3.01    Unclassified Claims.**    Under §1123(a)(1), administrative expense claims and priority tax claims are not in classes.

**3.02    Administrative Expense Claims.**    Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VIII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

**3.03    Priority Tax Claims.**    Each holder of a priority tax claim will be paid in full within 30 days of the confirmation of the Plan.

**3.04    United States Trustee Fees.**    All fees required to be paid by 28 U.S.C. §1930(a)(6) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee fees owed on or before the effective date of this Plan will be paid within 90 days of completion of the Plan.

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Claims and interests shall be treated as follows under the Plan:

**4.01    Class 1 Claim (Secured Claim of Key Bank).**    The Class 1 Claim is impaired. The Class 1 Claim is the secured claim of Key Bank, which is secured by a perfected first priority mortgage on the Debtor's real estate, described on the attached **Exhibit "B"**. The claim filed by Key Bank specifies a balance on the Class 1 Claim of $22,795,786.84 (including prepayment penalties, late fees and default interest). This claim is contested. The allowed claim shall bear interest at the rate of 6.0% per annum and shall be paid in equal monthly installments of $105,000.00. The first monthly installment shall be due on the 11th day of the month after the date of confirmation of the Chapter 11 Plan, and subsequent monthly payments due on the 11th day of each month thereafter. The entire unpaid balance shall be due and payable on or before January 8, 2014. All terms of the Key Bank mortgage and loan covenants shall survive except the following:

(a) Interest Rates and Monthly Payment;

(b) The restriction imposed for parking shall be modified so that the rights granted by the lease with Green Lot, LLC shall be the sole requirement for parking.

2

(c) All provisions pertaining to the escrow and Lock Box arrangement. All payments shall be made directly by the Debtor. However if the Debtor defaults in any payment for greater than 15 days, the Lock Box and escrow provisions shall be reinstated;

(d) All provisions relating to the escrow for tenant improvements; and

(e) All prepayment premiums, yield maintenance charges or premiums, fees, penalties, charges, and prohibitions. The premium penalty shall lapse and shall no longer be effective 3 years from the date of confirmation of the Plan.

(f) All existing subordinate mortgage liens shall not be deemed as default under the loan restrictions.

(g) The restrictions relating to transfer shall not be deemed violated by virtue of the treatment of the class six and seven claims surrender.

**4.02    Class 2 Claim (Secured Claim of Wachovia Bank).** The Class 2 Claim is impaired. The Class 2 Claim is the secured claim of Wachovia Bank, which is secured by a perfected second priority mortgage on the Debtor's real estate, described on the attached **Exhibit "B"**. The debtor anticipates that the allowed class 2 class will be approximately $1,133,000.00. The allowed claim shall bear interest at 6.5% per annum and shall be paid in equal monthly installments of $7,200.00. The first monthly installment shall be due on the 20th day of the month after the date of confirmation of the Chapter 11 Plan, and subsequent monthly payments due on the 20th day of each month thereafter. The entire unpaid balance shall be due and payable four years from the date of confirmation. All terms of the Wachovia mortgage and loan covenants shall survive, except for the following:

(a) Interest Rates and Monthly Payment;

(b) The restriction imposed for parking shall be modified so that the rights granted by the lease with Green Lot, LLC shall be the sole requirement for parking.

(c) All provisions pertaining to the escrow and Lock Box arrangement. All payments shall be made directly by the Debtor. However if the Debtor defaults in any payment for greater than 15 days, the Lock Box and escrow provisions shall be reinstated;

(d) All provisions relating to the escrow for tenant improvements; and

(e) All prepayment premiums, yield maintenance charges or premiums, fees, penalties, charges, and prohibitions. The premium penalty shall lapse and shall no longer be

effective 3 years from the date of confirmation of the Plan.

(f) All existing subordinate mortgage liens shall not be deemed as default under the loan restrictions.

(g) The restrictions relating to transfer shall not be deemed violated by virtue of the treatment of the class six and seven claims surrender.

**4.03 Class 3 Claim (Secured Claim of First United Mortgage).** The Class 3 Claim is impaired. The Class 3 Claim is the secured claim of First United Mortgage, which is secured by a perfected third priority mortgage on the Debtor's real estate, described on the attached **Exhibit "B"**. The balance owed on the Class 3 Claim is approximately $1,500,000.00. This claim shall bear interest at 3% per annum and interest only shall be paid quarterly for a term of four years. The entire unpaid balance shall be paid in full in four years.

**4.04 Class 4 Claims (Holly Duran Real Estate Partners, ADAN 3, CBIZ Gibraltar Real Estate Services, and US Equities Realty).** The Class 4 Claims are impaired. The Class 4 claims are the allowed claims of Holly Duran Real Estate Partners, LLC ($85,701.10), ADAN 3, LLC ($89,400.00), CBIZ Gibraltar Real Estate Services, LLC ($67,369.00), and US Equities Realty, LLC ($51,647.00). These claims shall be paid in full without interest in 4 equal annual installments. The first annual installment shall be due within 6 months after the date of confirmation, and subsequent annual installments shall be due every 12 months thereafter. The parties shall retain their liens against the property.

**4.05 Class 5 Claims (Tenants with Security Deposits).** The Class 5 Claims are not impaired. The Class 5 Claims are the claims of all tenants with security deposits paid to Jackson Green, LLC, as shown on the attached **Exhibit "C"**. The claims shall be paid pursuant to the terms of the lease agreements. No interest shall accrue on these claims.

**4.06 Class 6 Claim (Albion Jackson Green).** The allowed Class 6 Claim of Albion Jackson Green shall be resolved by allowing Albion Jackson Green to record its unrecorded Tenants in Common interest for 20% of the ownership of the real estate of the Debtor subject to all existing liens and encumbrances of record and any liens or claims of creditors shown as Class One thru Class Five. Albion Jackson Green claim shall be deemed satisfied in full as a result of the recording and retention of its ownership interest.

**4.07 Class 7 Claim (MCZ/Michael Lerner).**

(a) The Class 7 Claim is the unsecured claim of MCZ. This claim shall be paid in full on or before four years from the date of confirmation. The Debtor shall execute and record a mortgage and promissory note for $1,200,000.00 (subordinate to all existing liens set forth as

4

Class 1, 2, and 3 claims) to secure this obligation. This claim shall bear interest at 2.5% per annum. Interest shall be paid quarterly with the first payment due 3 months from the date of confirmation and subsequent payments due every three months thereafter. No payments shall be made on this claim by David Heyes, Paula Heyes, Jackson Green & Associates, Inc., or any other related party except as specified herein. Any prior assignment or pledge of any equity interest in the Debtor to MCZ, upon confirmation shall be cancelled and released. In addition, MCZ shall not be entitled to a claim or vote in the Heyes' personal bankruptcy case.

(b)  In the event of default, MCZ shall have the right to take over management of the Debtor's real estate pursuant to the terms of the Management Agreement marked as **Exhibit "J"**. Default shall consist of failure of the Debtor to pay an interest payment when due or failure to pay the claim of MCZ in full within four years. Upon default, MCZ shall give the Debtor 15 days' written notice of the default and the Debtor's right to cure the default. MCZ shall not have the right to take over management of the Debtor's real estate unless the Debtor fails to cure the default within 15 days after receiving the written notice.

**4.08  Class 8 Claim (Everest Real Estate Fund).** The Class 8 Claim is the claim of Everest Real Estate Funds, LLC, also known as Equibase Capital Group, LLC. This claim shall be paid $20,000.00 within 4 years after the date of confirmation of the Chapter 11 Plan. This claim shall not bear interest. All rights and claims of any nature shall expire upon payment of the $20,000.00.

**4.09  Class 9 Claims (All Other Unsecured Claims).** The Class 9 Claims are all other unsecured claims. These claims shall be paid 60% of the allowed claim in four equal annual installments and shall not bear interest. The first annual installment shall be due one year after the date of confirmation, and each subsequent installment due each year thereafter. In the sole option of the Debtor, any claim allowed for less than $1,000.00 may be paid 60% in one installment due one year after confirmation of the Chapter 11 Plan.

**4.10  Class 10 Interests (Equity Interests in the Debtor).**

Jackson Green and Associates, Inc. owns one (1.0%) percent of the Debtor, Paula Heyes owns 50% of the Debtor and David Heyes owns 49% of the Debtor. Paula Heyes, David Heyes and Jackson Green and Associates, Inc. shall retain their ownership interests free and clear of any liens or pledges.

4.11    Summary of Plan Treatment.

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Secured Claim of Key Bank Real Estate Capital Claims | Impaired | Payment in equal monthly installments of $105,000 with interest at 6.0% per annum, pursuant to the terms, except specified terms that do not survive; unpaid balance due on or before January 8, 2014. |
| Class 2 – Secured Claim of Wachovia Securities | Impaired | Payment in equal monthly installments of $7,600.00 with interest at 6.5% per annum, pursuant to the terms, except specified terms that do not survive; unpaid balance due four years from confirmation. |
| Class 3 – Secured Claim of First United Mortgage | Impaired | Payment of interest only in quarterly installments with interest at the rate of 3% per annum; unpaid balance due four years from confirmation. |
| | | |
| Class 4 – Unsecured Claims of Holly Duran, ADAN 3, CBIZ, and US Equities | Impaired | Payment of 4 equal annual installments with no interest. |
| Class 5 – Claims of Tenants who made Security Deposits | Unimpaired | Payment pursuant to the terms of the contract termination of their leases; no interest. |
| Class 6 – Claim of Albion Jackson Green | Impaired | Recording of a 20% ownership interest as a tenant in common (subject to existing liens and restrictions of record). |
| Class 7 – Unsecured Claim of MCZ/Michael Lerner | Impaired | Payment of $1,200,000.00 with interest at 2.5% per annum within four years after confirmation; interest payments yearly from confirmation date. |
| Class 8 – Claim of Everest Real Estate Fund | Impaired | Payment of $20,000.00 with no interest within four years from the date of confirmation. |

| Class 9 – Unsecured Claims | Impaired | Payment of 60% of allowed claim in four equal annual installments. If the allowed claim is less than $1,000.00, it may be paid in one installment due one year after confirmation. |
| --- | --- | --- |
| Class 10 – Equity Interest Debtor | | Paula Heyes, David Heyes and Jackson Green and Associates shall retain their ownership interest in the Debtor free and clear of any liens or pledges. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02 Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed.

5.03 Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor assumes all executory contracts and unexpired leases as shown on Schedule G as well as the Property Management Agreement with Builders Realty & Investment Corp. (attached as Exhibit "J").

(b) The Debtor requests all executory contracts with any leasing agents or real estate agencies. A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than sixty (60) days after the date of the order confirming this Plan.

# ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.01  Funding. The Plan will be funded in the following manner:

(a)  Cash flow from operations is (as shown by the projections attached to the disclosure statement) expected to yield a net annual cash flow of approximately $1,856,331.00 before any payments to creditors and before taxes.

(b)  In order to pay the Class 3 and Class 7 claims, the Debtor will either sell a partial interest as a tenant in common, or alternatively, when the credit markets improve the Debtor will refinance the Class 3 and 7 claims.

7.02  If Unable to Perform.

In the event that the property is not sold or refinanced and therefore creditors are not paid pursuant to the Chapter 11 Plan, then the following shall occur:
a. MCZ shall have the right to take over the management of the commercial properties;
b. Any creditor shall have the rights to enforce by suit or otherwise its rights pursuant to the terms of the chapter 11 plan.
c. The debtor may have the right to file a chapter 7 at that time.


# ARTICLE VIII
## GENERAL PROVISIONS

8.01  Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.02  Effective Date of Plan. The effective date of this Plan is the eleventh business day following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03  Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04  Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**8.05   Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.06   Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Wisconsin govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**8.07   Interest.** Unless otherwise specified, no claim shall bear interest.

# ARTICLE IX
## RELEASE

**9.01   Release.** Except as otherwise provided in this Plan, the distributions and rights afforded in this Plan shall be in complete and full satisfaction, effective as of the Effective Date, of all Claims of any nature whatsoever against the Debtor or its estate.

# ARTICLE X
## INJUNCTION

**10.01   Injunction.** Commencing on the Effective Date, except as expressly otherwise provided in this Plan, the holders of all Claims shall be enjoined from asserting against the Debtor, or its assets and properties, any other or further liabilities, Liens, obligations, or Claims, including but not limited to all principal and accrued and unpaid interest on the debts of the Debtor, based on any act or omission, transaction, or other activity or security interest or other agreement of any kind or nature occurring, arising, or existing prior to the Confirmation Date that was or could have been the subject of any Claim, whether or not Allowed. All legal or other proceedings and actions seeking to establish or enforce liabilities, Liens, Claims, or obligations of any nature against the Debtor or assets or properties received or retained by it with respect to debts and obligations, if any, of the Estate arising before the Confirmation Date shall be permanently stayed and enjoined, except as specifically provided in this Plan.

# ARTICLE XI
## DISCHARGE

**11.01.   Discharge.** On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged from any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

# ARTICLE XII
## RETENTION OF JURISDICTION BY THE COURT

After the Confirmation Date, the Court may retain jurisdiction for the following purposes, or as otherwise permitted by law:

12.01 <u>Objections to Claims</u>. To hear and determine objections to the allowance of Claims, and requests for the estimation of Claims.

12.02 <u>Fee Applications</u>. To hear and determine any and all applications for compensation of professional services and disbursements and any other similar fees incurred prior to or subsequent to confirmation of the Plan.

12.03 <u>Pending Matters</u>. To hear and determine any and all pending applications, motions, adversary proceedings, and other contested matters not resolved by the Plan.

12.04 <u>Modification of Plan</u>. To modify the Plan to the extent permitted by the Plan and the applicable provisions of Section 1127 of the Code.

12.05 <u>Enforcement of Payments and Rights</u>. To enforce the terms and provisions of payments and rights required or created by the Plan.

12.06 <u>Provisions of Plan, Confirmation Order, and Code</u>. To enter such orders as may be necessary to consummate, interpret, and effect the provisions of the Plan and the Confirmation Order, or as may be otherwise required by the Code.

Dated this 28th day of January, 2010.

Respectfully submitted,

JACKSON GREEN, LLC

By: __/S/_____
     Paula Heyes, Member

____/S/_____
Terrence J. Byrne
Attorney for Debtor
P.O. Box 1566
Wausau, WI 54402-1566
(715) 848-2966

## EXHIBIT "B"

LOT 1 AND THE NORTH ½ OF LOT 2 IN BLOCK 19 IN DUNCAN'S ADDITION TO CHICAGO, (EXCEPTING FROM SAID PREMISES THE WEST 9.00 FEET THEREOF FOR ALLEY) IN THE EAST ½ OF THE NORTHEAST ¼ OF SECTION 17, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDAN, IN COOK COUNTY, ILLINOIS.

THE SOUTH 38.22 FEET OF LOT 5, ALL OF LOTS 6, 7, AND 8 (EXCEPT THE WEST 9 FEET OF ALL OF SAID LOTS FOR ALLEY) IN BLOCK 19 IN DUNCAN'S ADDITION TO CHICAGO, BEING A SUBDIVISION OF THE EAST ½ OF THE NORTHEAST ¼ OF SECTION 17, TOWNSHIP 39 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

# PROPERTY MANAGEMENT AGREEMENT

This Agreement made as of the 1st day of May, 2006, by and between Jackson Green LLC, an Illinois limited liability corporation (hereinafter referred to as "Owner"), and Builders Realty & Investment Corp., an Illinois corporation (hereinafter referred to as "Manager").

In consideration of the mutual promises and covenants herein, Owner and Manager agree as follows:

## ARTICLE I
### Exclusive Agency.

Owner hereby appoints Manager as the sole and exclusive leasing, rental agent and manager of the property described in Schedule 1 attached hereto (hereinafter referred to as "the Building") and Manager hereby accepts such employment.

## ARTICLE II
### Term of Agreement.

The term of this agreement shall commence May 1, 2006, and shall continue until April 30, 2007, and is automatically renewed thereafter for successive periods of one year each until terminated by either party upon not less than 60 days' written notice prior to the end of the initial term or any renewal period. Manager shall also, at its sole option, have the right to terminate this agreement at anytime during the initial term or any renewal term upon not less than sixty (60) days prior written notice to Owner. Upon termination, Owner shall remain bound by the obligations of all contracts for services, supplies and alterations Manager has entered into in connection with the performance of its obligations hereunder.

## ARTICLE III
### Leasing.

a. **Rental of Building.** Manager shall use its best efforts to rent all space in the Building which is now vacant or may become vacant during the term of this agreement. When appropriate, Manager shall engage the services of other real estate brokers to lease space in the Building who shall be paid from such commissions as may become due to Manager under the terms of this agreement.

b. **Negotiation of Leases.** Owner shall refer all inquiries concerning the rental of space in the Building to Manager. All negotiations with prospective tenants shall be conducted by Manager or under Manager's direction. Manager shall have the authority to execute on behalf of Owner all leases or rental agreements for periods of five (5) years or less. Manager shall execute all leases covering a term of more than five (5) years only with the prior written approval of Owner.

c. **Advertising.** Subject to the approval of Owner and at Owner's expense, Manager shall advertise such space as is available for rent and arrange for such signs, renting plans, brochures and other forms of advertising as may appear advisable. Owner agrees to reimburse Manager for all out-of-pocket expenses, including, but not limited to, long-distance telephone calls and, with Owner's prior approval, the cost of out-of-town travel.

d. **Rental Rates.** Owner shall establish rental rates for space in the Building. Manager shall,

promptly following the execution of this agreement and from time to time thereafter, make recommendations to Owner with respect to rental rates.

e. **Compensation.** As compensation for renting and leasing space in the Building, Owner shall pay Manager as set forth in Schedule 1.

## ARTICLE IV
## Management.

a. **Management of Building.** Manager shall manage the Building in an efficient and businesslike manner having due regard for the age and physical condition of the Building. Manager, through its employees and independent contractors, shall supply complete operational services for the Building.

b. **Repairs.** Manager shall, in the name of and at the expense of Owner, make or cause to be made such ordinary repairs and alterations as Manager may deem advisable or necessary. However, not more than five thousand dollars ($5,000.00) shall be expended for any one item of repair or alteration without Owner's prior written approval, except emergency repairs if, in the opinion of Manager, such repairs are necessary to protect the Building from damage or to maintain services to tenants as called for in their leases.

c. **Service Contracts.** Manager shall, in the name of and at the expense of Owner, contract for those utilities and other building operation and maintenance services Manager shall deem advisable, provided that no service contract shall be for a term exceeding one year without the prior written approval of Owner. Manager shall, at Owner's expense, purchase and keep the Building furnished with all necessary supplies. All expenses shall be charged to Owner at net cost and Owner shall be credited with all rebates, refunds, allowances and discounts allowed to Manager.

d. **Reimbursement.** Owner agrees to reimburse Manager for all out-of-pocket expense, including, but not limited to, long-distance telephone calls and, with Owner's prior approval, the cost of out-of-town travel.

e. **Employees.** Except as provided in Schedule 1, all persons employed in the operation of the Building shall be employees of Manager or a legal entity owned or controlled by Manager. Manager shall make disbursements and deposits for all compensation and other amounts payable with respect to persons who are employed in the operation of the Building, including, but not limited to, unemployment insurance, social security, workmen's compensation and other charges imposed by a governmental authority or provided for in a union agreement. Manager shall maintain complete payroll records. All payroll costs, including but not limited to, those enumerated herein, are operating expenses to be reimbursed to Manager from Owner's funds received by Manager.

f. **Expenditures.** All expenditures authorized by this agreement shall be considered operating expenses to be paid from Owner's funds received by Manager. In the event disbursements shall be in excess of the rents collected, Owner agrees to pay such excess promptly on demand.

g. **Monthly Statements.** Manager shall, by the fifteenth (15th) day of each month, render to Owner a statement of receipt and disbursements for the preceding month. Manager shall, after deducting Manager's compensation and any other sums due Manager from Owner, hold or expend such sums as Owner may have directed herein or otherwise and remit the balance to Owner.

h. **Collection and Segregation of Funds.** Manager shall collect the rent and other income from

tenants of the Building. All funds received by Manager for or on behalf of Owner (less any sum properly deducted by Manager pursuant to any of the provisions of this agreement) shall be deposited in a bank in a special account maintained by Manager for the deposit of funds of Owner and not mingled with the funds of Manager.

**i. Bonding Employees.** All employees of Manager who handle or are responsible for Owner's funds shall be bonded by a fidelity bond in an adequate amount.

**j. Interest and Tax Payments.** Manager shall pay interest or amortization on mortgages, taxes, assessments, premiums on insurance or reserves for such items only as designated in Schedule 1.

**k. Special Services.** At the request of Owner, Manager will perform the following special services for Owner: (i) supervise remodeling, (ii) provide special accounting and (iii) act as property consultant. If such special services are provided, additional fees shall be payable in an amount agreed upon between the parties.

**l. Legal Proceedings.** Manager shall, at Owner's request and expense, engage counsel and cause such legal proceedings to be instituted as may be necessary to enforce payment of rent and may compromise disputes with tenants involving setoffs or damage claims so long as the amount compromised does not exceed one month's rent payable by such tenant.

**m. Compensation.** As compensation for management of the Building, Owner shall pay Manager as set forth in Schedule 1.

**ARTICLE V**
**Indemnification.**

**a. Indemnification.** Owner agrees: (i) to hold and save Manager free and harmless from any damage or injuries to persons or property by reason of any cause whatsoever either in and about the Building or elsewhere when Manager is carrying out the provisions of this agreement or acting under the express or implied directions of Owner; (ii) to reimburse Manager upon demand for any moneys which Manager is required to pay out for any reason whatsoever, under this agreement or in connection with or as an expense in defense of any claim, civil or criminal action, proceeding, charge or prosecution made, instituted or maintained against Manager or Owner and Manager, jointly or severally, affecting or due to the conditions or use of the Building or acts or omissions of Manager or employees of Owner or Manager, or arising out of or based upon any law, regulation, requirement, contract or award relating to the hours of employment, working conditions, wages or compensation of employees or former employees; and (iii) to defend promptly and diligently, at Owner's sole expense, any claim, action or proceeding brought against Manager or Manager and Owner jointly or severally arising out of or connected with any of the foregoing, and to hold harmless and fully indemnify Manager from any judgment, loss or settlement on account thereof. The foregoing provisions of this Article shall survive the termination of this agreement, but this shall not be construed to mean that Owner's liability does not survive as to other provisions of this agreement. Nothing contained in this Article shall relieve Manager from responsibility to Owner for gross negligence or willful misconduct, unless such gross negligence or willful misconduct is covered by Owner's insurance on behalf of Manager.

**b. Compliance with Laws.** If Owner shall fail or refuse to comply with or abide by any rule, order, determination, ordinance or law of any federal, state or municipal authority, Manager, upon giving twenty-four hours' written notice mailed to Owner at Owner's address as hereinafter set forth, may terminate this

agreement.

c. **Insurance.** Owner agrees to carry public liability, elevator liability, and contractual liability (specifically insuring the indemnity provisions contained in Article V, paragraph (a)), steam boiler (if applicable), and such other insurance as the parties agree to be necessary or desirable for the protection of the interests of Owner and Manager. In each such policy of insurance, Owner agrees to designate Manager as a party insured with Owner, and the carrier and the amount of coverage in each policy shall be mutually agreed upon by Owner and Manager. A certificate of each policy issued by the carrier shall be delivered promptly to Manager by Owner. All policies shall provide for ten days' written notice to Manager prior to cancellation.

d. **Waiver of Subrogation.** Owner shall procure an appropriate clause in, or endorsement on, each of its policies for fire or extended coverage insurance and on all other forms of property damage insurance including, but not limited to, coverage such as water damage, property damage, boiler and machinery insurance and sprinkler leakage insurance, covering the Building or personal property, fixtures or equipment located thereon whereby the insurer waives subrogation or consents to a waiver of the right of recovery against Manager, and having obtained such clause or endorsement of waiver of subrogation or consent to a waiver of right of recovery, Owner hereby agrees that it will not make any claim against or seek to recover from Manager for any loss or damage to property of the type covered by such insurance.

## ARTICLE VI
### Sale of Building.

If the Building is sold prior to termination of this agreement, Manager shall represent Owner in connection with the sale. Owner shall pay Manager a commission for these services in accordance with Schedule 1.

## ARTICLE VII
### Miscellaneous.

a. **Bankruptcy and Insolvency.** In the event a petition in bankruptcy is filed by or against either Owner or Manager, or in the event that either shall make an assignment for the benefit of creditors or take advantage of any insolvency act, either party hereto may immediately terminate this agreement by written notice. Remedies set forth hereinabove shall be in addition to and shall not exclude any other remedy available under applicable law to the parties hereto.

b. **Independent Contractors.** It is expressly understood and agreed that Manager will act as an independent contractor in performance of this agreement. No provision hereunder shall be intended to create a partnership or a joint venture with respect to the Building or otherwise.

c. **Notice.** Any notice required or permitted under this agreement shall be given when actually delivered or when deposited in the United States mail as certified mail addressed as follows:

To Owner:    Jackson Green LLC
             9359 Timberline Drive
             P.O. Box 881
             Minocqua, Wisconsin 54548
To Manager:  Builders Realty & Investment Corp.

9359 Timberline Drive
P.O. Box 881
Minocqua, WI 54548

or such other address as may be specified from time to time by either party in writing.

**d. Suit or Action.** If suit or action is instituted in connection with any controversy arising out of this agreement, the prevailing party shall be entitled to recover, in addition to costs, such sums as the court may adjudge reasonable as attorney's fees in such suit or action and on any appeal from any judgment or decree entered therein.

**e. Assignment and Amendment.** All terms and conditions of this agreement shall be binding upon the parties hereto and their respective successors and assigns. This agreement may not be modified or amended except by the written agreement of the parties.

IN WITNESS WHEREOF the parties hereto have executed this agreement in duplicate as of the date first hereinabove written.

Jackson Green LLC
Jackson Green Associates, Inc., Manager

By: _____
    Paula Heyes, President

Builders Realty & Investment Corp.

By: _____
    David Heyes, President

# SCHEDULE 1

## Dated: May 1, 2006

1. The Property covered by the management agreement is described as follows:

833 West Jackson Boulevard, 322 South Green Street , Chicago, IL.

2. Owner shall compensate Manager for renting and leasing space in the Property, including expansion of space occupied by existing tenants, as follows:

The leasing commission shall be one dollar $1.00 per rentable square foot per year of the term or fraction thereof. If a tenant is represented by a real estate broker, Owner shall pay a total amount of one and one-half (1.5) times the aforementioned amount which shall be allocated as follows: two-thirds (2/3) of the total amount shall be paid to tenant's real estate broker and the remaining one-third (1/3) shall be paid to Management Company.

The commission on new leases shall be payable as follows: one-half (1/2) of the commission shall be paid within fifteen (15) days after lease execution and the balance of the commission shall be due and payable within fifteen (15) days after occupancy. The commission on lease renewals and expansions shall be payable as follows: the commission shall be paid in full within fifteen (15) days after lease execution.

Manager shall be entitled to compensation for expansion space and renewals at the rates specified above upon the exercise of options contained in leases negotiated by Manager, even though such options are exercised after the termination or expiration of the agreement. Upon termination of the agreement pursuant to the provisions of Article II, Owner shall recognize Manager as the broker in any pending negotiations for lease of space in the Building. In the event of the consummation of a lease with a person with whom Manager was negotiating at the date of termination of the agreement, Owner shall pay Manager a commission at the rate prescribed above.

3. Manager's compensation for management of the Building shall be as follows:

A management fee of three percent (3%) of the Gross Receipts hereinafter defined) collected during the month from the tenants of the Property and others purchasing service or utilities therefrom. As used herein, the term "Gross Receipts", shall mean all amounts collected or received, whether by Owner or Manager, from the ownership or operation of the Property, including, but not limited to, rents, tenant reimbursements, license fees for antennas or signs, and storage fees or rents, but excluding (i) the proceeds of sale or refinancing of the Property, and (ii) the proceeds of any insurance payable on account of damage to or destruction of the Property (but including rent loss proceeds).

4. In the event of a sale of the Building, for which Manager was responsible in whole or in part, a commission shall be payable to Manager. The exact terms of compensation shall be established by mutual agreement of Owner and Manager based on Manager's responsibility for sale.

5. Manager shall pay, subject to availability of Owner's funds, mortgage payments, BOMA dues, taxes, assessments, premiums on insurance or reserves.

6. The persons holding the following job categories (current holders listed) who are engaged in the operation of the Building shall be employees of the Manager (but their salaries and benefits shall be reimbursed by Owner):

| | |
|---|---|
| Building Engineers/Porters: | Building Engineering and Porter Services shall be provided by a pool of employees. |
| | Building Engineer - 2006 Billing Rate: $44/Hr and $66/Hr for overtime. |
| | Building Porter - 2006 Billing Rate: $15/Hr and $22.50/Hr for overtime. |
| HVAC Technician: | Jason Szczur - 2006 Billing Rate: $60/Hr and $75/Hr for overtime. |

Current billing rates will remain in effect through December 31, 2006. Billing rates will be escalated at five percent (5%) per year, effective January 1 of each year.